JASPER E. JONES, Judge.
Plaintiffs, Henry Salles, individually and as tutor of his minor son Richard Henry Salles, and Glenn Wells, appeal a judgment rejecting their demands for damages sustained by them as result of the death of Opal E. Salles, wife of Henry Salles, and mother of minor Richard Henry Salles and plaintiff Glenn Wells. We reverse and award damages.
Decedent was killed in an automobile-tractor-trailer collision which occurred at the intersection of US Hwy. 80 and La. 169 in Caddo Parish, Louisiana. Decedent was riding as a guest passenger in a Buick automobile operated by Nellis Caulder in an easterly direction on US Hwy. 80 which at the site of the accident is a two-lane blacktop highway. The automobile was involved in a collision with a truck and trailer unit which was traveling south on La. 169, a two-lane black-top highway. The 18-wheel-er was owned by defendant McLean Trucking Co. and operated by defendant Warren A. Smith. The point of impact was in the southwest quadrant of the intersection of US Hwy. 80 and La. 169. There existed at said intersection blinking red lights facing traffic on US Hwy. 80 and blinking amber lights facing traffic on La. 169. There were also properly posted stop signs on US Hwy. 80 requiring traffic on 80 to stop at the intersection. The collision occurred at about 11:40 p. m. on March 10,1977. It had been raining that night but was not raining at the time of the collision. The driver of the Buick, as well as her guest passenger, were both killed in the collision, and the driver of the truck was severely injured.
Defendant, Smith, had been employed by McLean Trucking Co. as a truck driver for many years, and on the night of the accident had left McLean’s Shreveport terminal en route to Houston, Texas. Smith had entered 1-20 in the City of Shreveport and proceeded west on 1-20 for several miles to its intersection with La. 169 where he exited 1-20 and turned south on 169, planning to proceed to Houston on Hwy. 79 upon which he would have entered as he crossed Hwy. 80-La. 169 intersection. The distance between the point where Smith entered 169 and its intersection with 80 is approximately 1200 feet. Smith testified that as he crossed the overpass over 1-20 proceeding south, and while on the southerly side of the overpass, he touched his brakes “a little-bit”, stopped giving fuel to his engine, and slowed to a speed of 30-35 mph as he entered the intersection. There is a line of trees running north and south along the west side of 169 which line of trees is 140 feet west of 169. This line of trees impairs the vision of a driver approaching the intersection from the north on 169 and limits his ability to observe eastbound traffic on 80 until the eastbound traffic on 80 reaches a point 140 feet west of the intersection.
Smith for 2 years prior to the occurrence of this accident had been making the trip from Shreveport to Houston for McLean each day. He normally left Shreveport at about 10 p. m. at night. On his arrival at Houston he would change trailers and return to Shreveport. The trip normally took about 12 hours, and he made the trip 5 days a week. He crossed this intersection where the accident happened daily, and Smith had literally been through it from 800 to 1000 times prior to occurrence of this accident; and under these circumstances was very familiar with it and knew of the substantial vision impairment created by the line of trees above described.
Smith, the only eyewitness to the accident, testified at trial that when he was within about 50 feet of the intersection he looked to his right, or westerly, down Hwy. 80 and saw no approaching traffic and that the first time he saw the Buick occupied by Mrs. Salles was at the moment of impact.
Mr. Heard, an accident reconstruction expert, testified at trial for the appellees. This expert, based upon the nature and extent of damages to the Buick and the truck, the gouge marks located at the southwest quadrant of the intersection, and the location of the Buick and truck after the accident, expressed the opinion that the Buick was traveling east on Hwy. 80 and entered the intersection at a speed of 45-50 mph. He testified the truck entered the *944 intersection at a speed of 30-35 mph. He stated the right front of the truck collided with the left front of the Buick which at this time was about 3 ft. past the right front of the truck. This expert expressed the opinion that the Buick was traveling 66 feet per second and it took the Buick 2.25 seconds after it passed the tree line to travel the 140 feet to the intersection where the accident occurred. This expert stated that because Smith was not required to expect eastbound traffic on Hwy. 80 to run the stop sign and blinking red lights that it would take him 1.5 seconds to perceive the danger of the eastbound Buick entering the intersection without stopping, and .7 seconds following said perception to react (presumably to take action to activate the brakes on the truck). He stated that 2.2 seconds would have elapsed before Smith could have taken evasive action, and by this time the two vehicles which were on a collision course would have collided. The tenor of Heard’s testimony was that with the Buick proceeding toward the intersection at 45-50 mph and the truck proceeding toward the intersection at 30-35 mph, there was no action which Smith could have taken after the Buick cleared the tree line which would have avoided the collision.
The trial judge did not favor us with any reasons for his decision to reject the plaintiffs’ demands against McLean and Smith. We assume that the trial judge found Smith guilty of negligence for his failure to maintain a proper lookout, if for no other reason, but that the trial judge concluded, based upon Heard’s testimony, that even if Smith had seen the Buick he could not have avoided the accident, and for that reason Smith’s negligence was not a cause in fact of the accident.
The driver of the Buick who entered the intersection without stopping as required by the stop sign and the blinking red light was clearly guilty of negligence which was a cause of the accident. The issue here presented is whether defendant Smith, who entered the intersection faced with blinking yellow lights is also guilty of negligence which contributed to the accident. The duty of a driver who is faced with blinking amber lights is set forth in LSA-R.S. 32:234, which provides:
“A. Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal, it shall require obedience by vehicular traffic as follows:
(1) * * *
(2) FLASHING YELLOW OR AMBER (CAUTION SIGNAL) — When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through or past such signal only with caution.”
In the decision of Lockhart v. McInnis-Preston Chevrolet, Inc., 205 So.2d 744 (La. App. 1st Cir. 1967), the term caution as used in the statute was defined as:
“Prudent forethought to minimize risk.” Id. at 747.
The statute has been construed to require motorists who approach an intersection controlled by a flashing amber light to exercise a greater degree of care and vigilance than one approaching a green light or an uncontrolled intersection. He is required to approach the intersection at a reasonable speed maintaining a proper lookout. What constitutes reasonable speed and a proper lookout depends on the facts of each case. Great American Ins. Co. v. Turnage, 339 So.2d 1322 (La.App. 1st Cir. 1976); Rogers v. Tiger, 305 So.2d 147 (La.App. 1st Cir. 1974).
While a driver approaching a flashing yellow light may ordinarily rely on the fact that a driver approaching a flashing red light will stop before entering the intersection as required by law, the driver approaching a yellow light is under a duty to exercise caution and vigilance so that he may ascertain whether he can cross with safety. Greater American Ins. Co. v. Turnage, supra; State Farm Mutual Automobile Ins. Co. v. Merritt, 185 So.2d 832 (La. App. 3d Cir. 1966); Liberty Mutual Insurance Company v. Wilson, 282 So.2d 745 (La. App. 1st Cir. 1973).
The court in State Farm v. Merritt, supra, further explained the duty of the mo *945 torist approaching the flashing yellow light and quoted extensively from the jurisprudence on this duty as follows:
“In Savoy v. Cooley, [La.App., 144 So.2d 233], supra, a motorist on a right-of-way street was held to be negligent in proceeding into an intersection which, was controlled by a flashing amber light. In so holding, the court stated:
‘ * * *, we believe where, as here, the intersection was controlled by a semaphore light which was flashing red for the inferior traffic and yellow for Plaintiff, that Plaintiff was thereby given warning that caution was required of her in entering the intersection and she had no right to believe that her entrance therein could be made in full disregard of traffic on the inferior street. A motorist confronted with a caution light is not in the same position as one confronted with a green semaphore light which has been held to be an invitation to proceed through the intersection; on the other hand, the presence of the caution light served to give warning to the motorist that he is required to proceed through the intersection with caution. Thus a yellow light is a restriction on his movement through the intersection rather than an invitation to proceed oblivious of other traffic. Though the driver on the favored street when confronted with the yellow light may ordinarily rely on the motorist approaching the intersection on the inferior street stopping as required by the red light confronting him, if the evidence reflects such a motorist will not stop then the duty rests upon the driver on the favored street to avoid the accident if he can. The amber light serves as a warning to proceed with care and a motorist is guilty of negligence if he fails to take measures to avoid obvious danger. From the evidence in this case, despite the fact that Mrs. Savoy observed the approaching motorist, the Pace vehicle, rather than comply with the admonition given to her by the presence of the amber light and exercising caution, her action consisted in accelerating her vehicle and colliding with the Pace vehicle when she could have avoided the accident simply by stopping her car.’ (emphasis added)
In Wise v. Prescott, [244 La. 157, 151 So.2d 356] supra, the driver of a bus on a right-of-way street, who was confronted with a ‘slow sign’ at an intersection, collided with a vehicle which entered the crossing from an inferior street controlled by a ‘stop sign’. In holding the bus driver negligent, our Supreme Court said:
‘As the driver of the bus approached the intersection, he was confronted with a slow sign. What degree of care is required of a driver approaching such a sign? In our opinion, he is warned by such a sign that the locus or intersection is hazardous and unusual, his duty to exercise vigilance and prudence is increased, and it is inescapable that his right to rely on a motorist to obey a stop sign at that intersection is greatly decreased. When an intersection is controlled by a stop sign and a slow sign, a high duty of care is put on the drivers of vehicles on both thoroughfares, and, as stated by the Court of Appeal, a motorist when confronted with a slow sign must do more than diminish his speed. He must enter the intersection with extreme caution and vigilance so as to apprise himself that he may proceed safely across. Reducing his speed is only a partial fulfillment of the duty such a sign imposes.’ (emphasis added)
We stated in Landrum v. New Amsterdam Casualty Co., [La.App., 149 So.2d 182] supra, that:
‘We believe, however, that the blinking yellow light at the intersection added an additional duty on the driver approaching on the right-of-way street and that duty is to approach the intersection with caution commensurate to the situation. Such a blinking traffic light would indicate to any reasonable person that the intersection is more dangerous than other intersections where such a light does not exist. Although the additional duty to be cautious may vary according to the individual circumstances, in the case before us on appeal, Mrs. Landrum had the duty *946 of proceeding into the intersection with caution, at a reasonable rate of speed and also had the duty of looking carefully for the approach of vehicles along the inferi- or street.’ (emphasis added)
And, in the recent case of Granata v. Simpson [La.App., 181 So.2d 791], supra, our brothers of the First Circuit, in concluding that a motorist on a favored street, who entered an intersection controlled by a yellow flashing light, was negligent, said:
‘We also find that defendant, Maury Simpson, was guilty of negligence in failing to heed the warning of the flashing yellow light which was installed at this intersection by the Department of Highways to control the movement of north-south traffic on Plank Road. The statute, LSA-R.S. 32:234, supra, places the positive duty on Simpson to “proceed through or past such a signal only with caution.” We find that he failed in this duty in proceeding through this intersection at 40 to 45 miles per hour without observing the approach of the Brown vehicle on his right at such speed as to give notice to him that it might not stop before entering Plank Road. We find that Simpson was not keeping a proper lookout and was not operating his vehicle at such speed that he could have stopped in time to avoid the accident. * * * ’ (emphasis added)” Id. at 836-837.
The court in Merritt, supra, found that a motorist facing a flashing yellow light who had entered a blind intersection at a speed in excess of 15 miles per hour failed to use the caution required by the statute, stating:
“ * * * it is clear that he did not approach and enter this intersection with caution, or in such a manner that he could have brought his car to a stop after he reached a point where he could determine whether another vehicle on the inferior street was also about to enter the crossing.” Id. at 838. (our emphasis)
In Liberty Mutual v. Wilson, supra, among reasons given by the court for finding a motorist who entered an intersection with obstructions of vision facing a flashing yellow light at a speed of 35 mph guilty of negligence and causing an accident was:
“Additionally, Watson was also negligent in failing to approach the intersection with caution, in that the speed at which he was traveling was too great under the circumstances. At such speed, and without taking steps to reduce his speed in his approach to the intersection, he was unable to ascertain whether he could proceed into the intersection with safety. His conduct was even more unreasonable because of the fact that he was familiar with the hazardous nature of the intersection.” Id. at 747. (our emphasis)
In the decision of Rogers v. Tiger, supra, the court found a motorist who entered an intersection against a flashing yellow light at a speed of 15 mph guilty of negligence contributing to the accident because his speed was unreasonable and lookout improper considering the blindness of the corner, with the following statement:
“ ‘What constitutes reasonable speed and proper lookout must, of course, be determined in the light of the circumstances of each individual case.’ * * *
In the present case, the intersection was a blind one, a fact of which plaintiff was fully aware. He was also aware that Convention Street was one way west. Yet, he still looked to the right, a direction from which no traffic could legally travel on the one way street, and entered the intersection at such a speed that by the time he did check to the left, it was too late to avoid the collision.” (emphasis added) Id. at 150.
See also Wall v. American Employers Ins. Co., 386 So.2d 79 (La.1980), where the supreme court discussed the duty of drivers to maintain good lookout and reasonable speed when approaching an uncontrolled intersection that contained obstructions to visions with which the motorists are familiar.
The facts and circumstances of this case must be evaluated in light of the preceding principles of law in order to determine if Smith was guilty of negligence that contributed to this accident.
*947 Included among a series of pictures taken by the expert, Heard, a few days before the trial of this case in February 1980, were two pictures taken from the west shoulder of La. 169 with a camera directed at the tree line located 140 feet west of 169 and at US Hwy. 80 as it approached from the. west. The picture designated as 0-6 was said to have been taken 100 feet north of the intersection, and in this photograph one can see through the trees a vehicle located 200 feet west of the intersection. In a picture designated as P6 which was also taken from the west shoulder of 169 (there is no distance given as to the location of the photographer north of the intersection) one can see a vehicle on US 80 through the tree line which Heard estimated as being approximately 300 feet west of the intersection. It is significant that these photographs which were taken in February 1980 viewed the trees without any foliation upon them and therefore in about the same condition as they were on the date of the accident in March 1977. Heard testified on cross-examination that a vehicle proceeding south on 169 at a point 200 feet north of the intersection could see flashing lights on vehicles proceeding east on 80 after they reached a point of approximately 200 feet west of the intersection. The significance of these observations is that if defendant Smith, who was well aware of the hazardous intersection and the impairment of the vision because of the trees by having passed through there once each night, had been maintaining a proper lookout when he reached a point 200 feet north of the intersection, he would have observed the lights on the automobile proceeding east on 80 at a point when it was 200 feet west of the intersection. Because of his knowledge of the hazardous intersection he should have been ready to have taken an extremely good look at the approaching eastbound vehicle when it cleared the tree line 140 feet from the intersection. His speed at this point should have been reduced so he could stop before entering the intersection if necessary.
The facts and circumstances of the situation required him to maintain such a lookout and to have reduced his speed sufficiently that he could have brought his vehicle under control if the approaching eastbound vehicle failed to stop at the intersection. His failure in this regard is negligence.
Even should it be considered that the duty of proper lookout does not require an observation of the lights through the tree line, Smith’s intimate knowledge of the intersection and of its hazardous nature construed in light of the duty placed upon him approaching the flashing yellow light, at the very least, places him under a duty to approach this intersection at such a speed, maintaining such a lookout, that he could have avoided entering the intersection upon observing a vehicle proceeding toward it at a fast rate of speed once it cleared the tree line 140 feet west of the intersection.
If, as the expert testified, Smith was on a collision course with the eastbound vehicle at the point it cleared the tree line, and under these circumstances could not avoid the accident because he did not have time to perceive, react and activate the brakes, these unfortunate circumstances were created by the negligence of Smith in approaching the intersection at too great a speed, and this negligence is a proximate cause of the accident.
In the case of Haire v. Allstate Insurance Company, 224 So.2d 531 (La.App. 2d Cir. 1969), relied upon by appellees in brief, there was no obstruction or impairment of vision at the intersection as plaintiff approached it facing the blinking yellow light in the day time at a speed of 55 mph. While the court there held that this speed did not establish plaintiff failed to exercise due caution in entering the intersection the evidence there reflected that the vehicle which proceeded through the flashing red light could be observed by plaintiff and was traveling at a slow rate of speed, and perhaps had even slowed or stopped behind a truck which had stopped in obedience to the flashing red light before pulling around the truck and entering into the intersection. These factual circumstances are totally distinguishable from the facts presented in this case.
*948 In the decision of McMillan v. St. Farm Mut. Auto. Ins. Co., 356 So.2d 1368 (La. 1978), also relied upon by appellees in brief, the intersection was not blind and the motorist approaching the flashing yellow light had observed that the vehicle approaching the intersection facing the flashing red light had slowed as though to stop before entering the intersection, whereupon the motorist facing the flashing yellow preempted the intersection at a slow rate of speed and was then collided into by the motorist approaching facing the red light which had thereafter accelerated and entered the intersection without stopping. This case is factually dissimilar from the one here presented.
If Smith had made his proper observation he would have known that the approaching vehicle was not going to stop at the intersection and if he had been proceeding at the slow rate of speed required by the hazardous intersection he could have brought his vehicle under control and not entered the intersection, and the collision could have been avoided. We conclude that the negligence of Smith in failing to maintain a proper lookout and traveling at an excessive rate of speed, under the facts as exist in this case, were among the causes in fact of the accident which brought about the death of Mrs. Salles. The fact that Smith’s negligence had placed him in the posture described by the expert where he could not avoid the accident does not exonerate his negligence from being a contributing cause in fact of the accident.
While we are unaware of the reason for the trial judge’s factual conclusions upon which he based rejection of plaintiffs’ demands, we conclude he was clearly wrong in failing to find that the negligence of defendant, Warren A. Smith, was a contributing cause in fact of the accident.
QUANTUM
A letter written by one of decedent’s major daughters, no longer a party to this action, was introduced into evidence and stipulated to as being evidence of the close relationship that decedent had with her major son, Glenn Wells. This letter evinces a close and loving relationship between Wells and the decedent, his mother. It also establishes that he visited his mother monthly, on holidays, and had frequent telephone conversations with her.
Henry Salles testified that he and his wife had never been physically or legally separated (except for a short time when he was in the Coast Guard) and they had married in 1961. They participated in outdoor activities and social functions together. Henry Salles testified decedent was close to her adopted minor son Richard Henry Salles and took him to recreational, school and social functions. Henry also testified that Richard was uncontrollable after his mother’s death and did poorly in school but that he has finally straightened out. Henry stated that it was necessary that his 84-year old mother come to live with him and his minor son in order that she could prepare Richard for school and fix his supper.
Plaintiffs cite several cases reflecting damage awards in wrongful death actions, including the following:
Robertson v. Handy, 354 So.2d 626 (La. App. 1st Cir. 1977), in which the Court of Appeal affirmed a $40,000 wrongful death award to the surviving spouse, $15,-000 to each of the surviving minor children, and $10,000 to each of the surviving major children;
Graham v. Rudison, 348 So.2d 711 (La. App. 1st Cir. 1977), in which awards of $60,000 to the surviving husband, $45,000 to a minor son and $32,500 each to two older minor children of a former marriage for the wrongful death of the mother were affirmed;
Fowler v. Western Union Telegraph Co., 357 So.2d 1305 (La.App. 3d Cir. 1978), affirmed awards of $90,000 to the surviving husband and $25,000 to each of her major sons for the wrongful death of the mother; and
McKenzie v. Nationwide Mutual Ins. Co., 363 So.2d 1340 (La.App. 3d Cir. 1978), in which there was found to be no abuse of discretion in an award of $37,000 each to two major children for the wrongful death of both parents.
*949 Looking at these awards as a whole, we find on the basis of the jurisprudence and the evidence, Henry Salles is entitled to $60,000 for the wrongful death of his wife; Richard Henry Salles, the minor, is entitled to $40,000 for the wrongful death of his mother; and Glenn Wells, the major son, is entitled to $25,000 for the wrongful death of his mother.
Appellants initially included as defendant in this wrongful death action Henry T. Caulder, husband of the driver of the Buick, as head and master of the Caulder community and the Caulder insurer, State Farm Mutual Automobile Insurance Co., alleging Mrs. Caulder’s negligence as one cause of the accident. Before trial appellants settled their claim against Caulder and State Farm and reserved their rights against Smith and his employer, McLean. Evidence was presented at the trial which proved Mrs. Caulder’s joint concurring negligence with Smith caused the accident.
Appellants are entitled to recover from appellees here one-half of the damages they respectively sustained because of the death of Mrs. Salles. See Harvey v. Travelers Ins. Co., 163 So.2d 915 (La.App. 3d Cir. 1964); Wall v. American Employers Ins. Co., supra.
For the reasons assigned we REVERSE the judgment herein rejecting appellants’ demands and enter judgment as follows:
IT IS THEREFORE ORDERED that there be judgment herein in favor of Henry Salles and against Warren A. Smith and McLean Trucking Co., in the amount of $30,000, plus legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED that there be judgment herein in favor of Henry Salles, in his capacity as tutor of the minor Richard Henry Salles, and against Warren A. Smith and McLean Trucking Co., for the sum of $20,000, plus legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED that there be judgment herein in favor of Glenn Wells and against Warren A. Smith and McLean Trucking Co., for the sum of $12,500, plus legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED that Warren A. Smith and McLean Trucking Co. be cast for all costs incurred in these proceedings.