DOUCET, Judge.
These two consolidated suits involve claims for damages arising from injuries suffered as a result of a two-car collision which occurred on November 14, 1981, at approximately 8:00 P.M. The facts show that plaintiff, Altonette Davis Turner, was driving her 1977 Datsun 2-door automobile in an easterly direction on Woodyard Drive in Natchitoches, La. When plaintiff reachéd the intersection of Woodyard Drive and Highway One South, she stopped her automobile and observed the traffic conditions. Plaintiff proceeded into the intersection to make a left turn onto Highway One, intending to proceed in a northerly direction. Approaching the intersection from the North was Miss Connie Cannon. Plaintiff did not see Miss Cannon when she traveled into the intersection due to the fact that Miss Cannon’s vehicle was shielded from her view by the guard rail of the Cane River Bridge. When plaintiff realized that she had pulled out into the intersection in front of Miss Cannon, she accelerated her car in an attempt to avoid the collision. Plaintiff’s attempts were unsuccessful and the accident occurred. Plaintiff testified that she never saw any headlights, and this testimony was confirmed by Officer Ronald Spencer, who investigated the accident, and who testified at trial that Mrs. Turner indicated to him that she never saw any headlights.
As a result of the collision, Keith Davis Turner, plaintiff’s son and a passenger in the vehicle at the time of the accident, suffered serious injuries including a significant and permanent loss of use and dis-function of the right side of his body. It was established at trial that these injuries will require continued medical care through at least the age of eighteen.
Following the accident, plaintiff filed suit against the State of Louisiana, through the Department of Transportation and Development (DOTD) and the City of Natchitoch-es. Subsequently, Mrs. Turner’s lawsuit was consolidated with a suit filed by Louisiana Farm Bureau Mutual Insurance Company on its own behalf and on behalf of its insured, Miss Cannon, against the DOTD and the City of Natchitoches, attempting to recover property damage.[1] The DOTD filed third party demands against the City of Natchitoches, Miss Cannon, and her insurer, Louisiana Farm Bureau Mutual Insurance Company. The third party demands against the City of Natchitoches, Miss Cannon, and her insurer, were later dismissed.
Ultimately, the trial court rendered judgment on January 27, 1986 in favor of Alto- *491 nette Turner on behalf of her minor son awarding general damages to the child in the amount of $125,000; for disfigurement and limitation of activities, $125,000; and for loss of earnings and earning capacity, $235,776.81. The court awarded to Ms. Turner the sum of $13,363.15, representing past and future medical expenses. The trial court also awarded judgment against the DOTD in favor of Louisiana Farm Bureau in the sum of $1,933.33 and awarded Miss Cannon her deductible in the amount of $200. It is from this judgment that defendant, the DOTD appeals.
On appeal, defendant asserts eight assignments of error. Because of the similarity of many of the assignments of error, it would be inefficient to address each of them separately. Thus, this court will address the assignments of error in groups to be categorized according to the issues they present.
ASSIGNMENTS OF ERROR NUMBERS 1, 2, 3 and 4:
Defendant first contends that the trial court erred in ruling that the intersection in question constituted a hazardous condition, obviously dangerous to a reasonably careful and prudent driver. We disagree.
Usry v. Louisiana Department of Highways, 402 So.2d 240 (La.App. 4th Cir.1981), writ denied, 404 So.2d 1259 (La.1981), enunciated the duty of the Highway Department as follows:
“It is the duty of this department to construct and maintain the highways in a condition reasonably safe for persons exercising ordinary care and reasonable prudence. The Department of Transportation is only liable when the evidence shows (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver; and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. U.S.F. & G. Co. v. State, Dept. of Highways, 339 So.2d 780, 785 (La.1976); Doucet v. State Department of Highways, 309 So.2d 382 (La.App. 3rd Cir.1975) writ denied, 312 So.2d 340 (1975).”
Thus, as can be determined by the Usry, supra, decision, there are three findings which must be made in order to determine whether the DOTD breached its duty to the public. First, it must be found that a hazardous condition does in fact exist. The decision of whether a condition of a highway actually is dangerous and hazardous to an ordinary and prudent driver is a factual one, and the court should consider the frequency of accidents at the place in the highway, the physical aspects of the roadway, and the testimony of expert witnesses in arriving at this factual determination. Besnard v. Dept. of Highways, 381 So.2d 1303 (La.App. 4th Cir.1980).
Applying the above considerations to the instant situation, we find that the intersection in question constituted a hazardous condition, obviously dangerous to a reasonably careful and prudent driver. The “frequency of accidents” element was overwhelmingly established at trial. Accidents have been occurring at this location at the rate of at least one per month for the period from 1973 through 1980, with the exception of 1977 for which time period no records were available.
Additionally, we find that the “physical, aspects of the roadway” present a dangerous condition by shielding and hiding the lights of south-bound vehicles as they traverse Highway 1 South over the Cane River Bridge, and thus prevent the headlights of cars from being seen. Finally, the “testimony of expert witnesses” element has been taken into consideration and we find that the testimony of Mr. Duaine Evans established that the intersection in question posed an unreasonable risk of injury to the ordinary prudent driver for several reasons, including, but not limited to, the overall speed of the motorists through this intersection, the overall volume of vehicles through the intersection, the visual obstructions at the intersection, and the frequency of accidents at the intersection.
Thus, after considering the above standards of Besnard, supra, we are of the opinion that the condition of the intersec *492 tion in question is dangerous and hazardous to an ordinary and prudent driver.
Now that we have answered the threshold Usry, supra, question, it is necessary to determine whether the DOTD had either actual or constructive notice of the existence of the defect and failed within a reasonable time to correct it. We find that both inquiries can be answered in the affirmative.
The record is replete with evidence that the DOTD had notice of the intersection’s hazardous condition. Several letters were written to defendant concerning the hazardous condition of the intersection. These letters were written by then Mayor of Natchitoches, Robert D. DeBlieux, Senator Donald G. Kelly, a long-time resident of Natchitoches, and Representative Jimmy D. Long, also a long-time resident of Natchitoches. All of the letters explained the dangerousness of the intersection and in addition, all of the letters urged the DOTD to remedy the situation. Furthermore, as indicated previously, accidents occurred at this intersection on an average of one per month. Thus, in view of the letters from the Mayor, Senator and State Representative, and considering the large number of accidents at this particular intersection, we find that the trial court was correct when it found that the DOTD had notice of this hazardous condition and failed to take the necessary steps to correct it.
The defendant, in assignments of error 2, 3 and 4, contends that the trial court erred when it ruled that the accident in question was caused by the negligence or fault of DOTD and not by the negligence of plaintiff. We disagree.
With respect to plaintiff, we find, as did the trial court, that she was free from negligence. The testimony of plaintiff, as accepted by the trial court, reveals that she pulled up to the intersection in question, observed the on-coming traffic, and did not see Miss Cannon’s vehicle coming. The reason why plaintiff did not see Miss Cannon’s vehicle is clear: the lights of the on-coming vehicle were shielded from her view by the bridge railing which provided a sight obstruction and a blind area. Furthermore, Mrs. Turner was not aware of the hazardous condition. Thus, we find that Mrs. Turner’s actions were not unreasonable. Instead, we are of the opinion that she was just an innocent victim of an obviously dangerous condition. Consequently, we find that the trial court was correct when it found plaintiff free from fault and uphold the portion of the judgment which reflects same.
With respect to defendant, DOTD, we find, as did the trial court, that the accident was caused solely by its negligence. There is ample evidence in the record which supports this conclusion. While defendant’s initial traffic survey indicated that the warrant requirements were not met, Mr. Evans testified that in his opinion, warrant six was met in 1976 and that the State was unreasonable in not placing a signal light at the intersection at that time. Additionally, Mr. Evans testified that warrant two was met prior to the accident. Mr. Evans was of the opinion that from a safety standpoint, the State should have met its legal obligation to monitor the intersection. We find that had the DOTD done so, it. would have found that the requirements for a traffic light were met. Furthermore, we find that had the signal light been installed, the accident would have never occurred.
The trial court found that the sole and proximate cause of the accident was the negligence of defendant, DOTD. After having carefully reviewed the record, and based on the foregoing evidence, we find that the trial court’s ruling on this issue was not clearly wrong or manifestly erroneous. As such, we will not disturb the trial court’s findings in this matter on appeal.
ASSIGNMENTS OF ERROR NUMBERS 5 AND 6:
Defendant, in assignments of error five and six, contends that the trial court erred when it dismissed their claims against the City of Natchitoches and found the City of Natchitoches free from negligence. Defendant, in part, bases this con *493 tention on the fact that the City of Natchi-toches should have followed their suggestion to make Woodyard Drive one-way to remedy the hazardous situation. We do not agree with defendant’s contentions.
As correctly stated in brief by the City of Natchitoches:
“There can be no question but that there was absolutely not one bit of evidence offered to show that the City of Natchitoches should have made Woodyard Drive one-way going west. The closest anyone came to such a suggestion was that this remedy should be considered. The evidence shows that not only was this remedy considered, it was actually accomplished for a six month period of time during which it proved to be very unsatisfactory because it resulted in a much more hazardous situation at the “Y” intersection formed by Mill Street and Louisiana Highway One.
No one has suggested that the City of Natchitoches should have or even could have installed a traffic signal at the intersection in question or made any alterations to Louisiana Highway One, including the bridge railing. To the contrary, everyone admitted that only the State of Louisiana could have made any alterations or changes to the bridge crossing Cane River or installed a traffic signal at the intersection of Louisiana Highway One and Woodyard Drive.
Former Mayor DeBlieux testified that he served as Mayor from May, 1976 until 1980. He identified the letter he had written to Mr. Taylor with the Department of Transportation and Development dated November 1, 1976, wherein he requested a traffic signal at the intersection of Wood-yard Drive and Highway One south.
During Mayor DeBlieux’s reign, the City of Natchitoches had a population of about twenty-thousand people, and did not employ a traffic engineer, but instead had to rely on the expertise of the State of Louisiana with respect to all state highways and roads intersecting with city streets. Mayor DeBlieux recalled the State having performed a traffic study of the intersection in 1976 and later advising him that they would not install a traffic signal since it was not justified. According to Mr. De-Blieux, after the State refused to install a traffic signal at the intersection, the City offered to put a light at that intersection at its own cost but the State would not allow it.”
Based on the foregoing, we find that the trial court was correct when it dismissed defendant’s claims against the City of Natchitoches. As such, we affirm the portion of the trial court judgment which reflects same.
ASSIGNMENTS OF ERROR NUMBERS 7 AND 8:
Defendant, in the final two assignments of error, contends that the trial court erred in awarding to plaintiff’s minor child, $250,000 in general damages, and $235,776.81 for loss of future income and earning capacity. We disagree with both contentions.
Keith Turner has suffered tragic injuries as a result of the accident in question. As correctly stated by the trial judge in his written reasons for judgment:
“Keith Turner was 3½ years old at the time of the accident. He suffered spinal cord injury, causing paralysis of both arms and legs. With the left side of his body finally becoming functional, he appeared in court at the trial and exhibited his injuries and paralysis to the Court. Following his release from the hospital ten (10) days after the accident, he could not walk for six (6) months. He experienced bladder and bowel problems and, while the bowel problem cleared up during the early stages of his recovery, he still has some bladder problems. He has received physical therapy on a regular basis from Mr. Eugene Christmas of Natchitoches and bi-monthly trips to LSU-Shreveport Hospital from the time of the injury through 1983. In March of 1984, he underwent surgery in Shreveport, Louisiana, at the Shriners Hospital for Crippled Children. The surgery was on his right leg and is referred to as a “tendon release.” He remained in a long leg cast for six (6) weeks and in a short leg cast until June of 1984. He continues to be treated at the Shriners Hospital.
*494 He was examined by a psychiatrist, Dr. Paul Ware (See P-35). Dr. Ware stated that the impairment to his right arm and leg would not get any better; that he would not be able to compete in the manual labor market when he becomes 18 or 20 years of age; and that Keith would not function adequately in any skilled function which required the use of both arms and legs. In Dr. Ware’s opinion, Keith has well over 50% disability of both his right arm and leg. Dr. Ware suggested that the child be evaluated by Psychologist, Dr. Ronald Goebel. This evaluation showed that Keith Turner had an IQ of 76, this being below average and not of the caliber necessary to complete college or engage in any professional-type activities.
Dr. Joseph Á. Thomas, the Natchitoches treating physician, gave Keith a 50% loss of use of his body as a whole, and stated that the loss was fixed and permanent. This is somewhat corroborated by Ortho-paedic Surgeon, Dr. A.E. Dean of Shreveport.
Dr. Richard Galloway, an expert in vocational rehabilitation, testified that Keith Turner had for all practical purposes, because of his injuries, been effectively removed from the labor market.
The Court finds that Keith Turner will always be handicapped; he will always have a disfigured right side, including a abnormal right hand and abnormal right foot and leg, and a abnormal gait and stride.
Dr. Earl Thames testified that Keith Turner had a 38.1 year period of work expectancy. Based on the minimum wage of $3.35 per hour at an average of 33 hours per week; that this was a potential loss which totaled $219,021.66 plus Social Security benefits of $16,755.15, for a total of $235,776.81.
Dr. Roger L. Burford estimated Keith Turner’s present value of loss of earnings based on the 1981 discounted value to be $317.000.”
Defendant, on appeal, essentially contends that the trial court erred when it chose to give credence to plaintiff’s experts and not theirs. However, our state has consistently held that where testimony is in conflict, reviewing courts must give great weight to factual conclusions of the trier of fact, even if there is conflicting testimony, and where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact by the trial court should not be disturbed upon review in the absence of manifest error. Richoux v. Hebert, 449 So.2d 491 (La.App. 3rd Cir.1983), writ denied, 450 So.2d 368 (La.1984); Conly v. Town of Forest Hill, 463 So.2d 72 (La.App. 3rd Cir.1985).
After having carefully reviewed the record, we find no manifest error in the amounts awarded by the trial court. For this reason, we will not disturb the awards made on appeal.
Accordingly, for the foregoing reasons, we affirm the judgment of the trial court at appellant’s cost.
AFFIRMED.

. A separate judgment in the consolidated appeal Louisiana Farm Bureau Mutual Ins. Co., et al, v. State of La., through the Dept. of Transp. and Dev., et al, 509 So.2d 494 (La.App. 3rd Cir.1987) is being handed down this date.