402 So.2d 240 (1981)
Jana P. USRY, widow of David P. Usry
v.
LOUISIANA DEPARTMENT OF HIGHWAYS
Nos. 12024, 12025.
Court of Appeal of Louisiana, Fourth Circuit.
July 7, 1981.
Writs Denied September 28, 1981.
*242 Lawrence S. Kullman, Harvey J. Lewis, New Orleans, for Jana P. Usry, plaintiff-appellant; Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, of counsel.
Joseph E. Roberts, Hebert & Abbott, New Orleans, for Reliance Insurance Co., plaintiff-appellant.
Philip K. Jones, Norman L. Sisson, Marshall W. Wroten, Jesse S. Guillot, New Orleans, for Louisiana Department of Transportation and Development, defendant-appellee.
Before BOUTALL, BARRY and KLEES, JJ.
BOUTALL, Judge.
This appeal arises from a judgment of the trial court dismissing the plaintiff's claim for damages from the defendant for the wrongful death of the plaintiff's husband who was fatally injured in an auto accident.
On September 8, 1975, at approximately 9:15 P.M., David Usry, an employee of Creative Industries was travelling alone in his rented automobile in an easterly direction on Interstate 10 toward New Orleans. When he reached the area of this 3 lane highway which forms four lanes, two for Interstate 610 to Slidell and two for Interstate 10 to downtown New Orleans, Usry was driving in the far left lane leading to Interstate 610. At this point Usry made an attempt to cross the other lane of traffic leading to Interstate 610 and enter one of the two lanes which form Interstate 10 toward downtown New Orleans. In doing so Usry successfully crossed one lane of traffic but then entered the gore area between both Interstates 10 and 610 and lost control of his vehicle causing it to jump the guard rail and careen into a nearby canal. Usry was unable to escape the vehicle which he occupied and suffered death by drowning. Thereafter, Jana Usry, wife of the decedent, filed suit against the Louisiana Department of Transportation and Development (hereinafter referred to as the Department of Transportation) seeking recovery of damages for the alleged wrongful death of her husband. No answer was filed by the Department of Transportation. A separate suit was filed by Reliance Insurance Co., the workman's compensation insurer of the decedent's employer, seeking recovery of the funeral and medical expenses it had paid to Mrs. Usry and for the compensation benefits it had paid under its obligation to Mrs. Usry. Named as a defendant in this proceeding was the Department of Transportation. The two suits were consolidated for trial. The trial court dismissed the claims of Mrs. Usry and the *243 compensation carrier Reliance Insurance Co. and they appeal.
On appeal there are two basic issues before us: 1) whether the Department of Transportation is liable for the death of the decedent under either the strict liability imposed by C.C. 2317, or fault imposed by C.C. 2315; and 2) whether the workman's compensation carrier is entitled to recovery of the compensation benefits it has paid and is obligated to pay the plaintiff.

I
It has only been recently held that the tort theory of Strict Liability under C.C. Art. 2317 can be applied to public bodies. In Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980) the Louisiana Supreme Court indicated that municipalities and other public bodies could be held liable for damages caused by defective things in their custody. To establish liability under this theory one must prove:
"... that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defect that is that it occasioned an unreasonable risk of injury to anotherand that his injury was caused by the defect."
Jones v. City of Baton Rouge, supra. Shipp v. City of Alexandria, 395 So.2d 727 (La. 1981).
The record in the matter before us indicates that David Usry, a frequent visitor to New Orleans, rented an automobile from Avis Rent-a-Car at the New Orleans International Airport around 8:30 on the evening of September 8, 1975. Usry entered 1-10 travelling in an easterly direction toward downtown New Orleans as he was planning to spend the night at a hotel in the French Quarter. As he approached the Bonnabel Boulevard overpass he was in the left lane of the three lane highway. The highway signs indicated that travelers heading East to New Orleans should be in the center and right lanes. Further down the roadway was a second sign which indicated that motorists going East to New Orleans should be in the far right lane. Usry continued to remain in the far left lane despite this second advance notice. An additional sign at this point indicated that the middle and far left lanes were to be used as an exit for West End and Canal Blvd. The next sign up the highway was located at the fork which divided into four lanes for 1-10 East to New Orleans and two for 1-610 to Slidell. It indicated that the two lanes on the right were for travelers headed to New Orleans on 1-10 East and the two lanes on the left were for motorists traveling on 1-610 to Slidell. Usry continued to operate his vehicle in the far left lane when shortly before he reached the fork he made an attempt to cross into one of the two lanes leading to New Orleans. In doing so Usry successfully crossed one lane of traffic but then entered the gore area between both 1-10 and 1-610. He lost control of his vehicle when one of the tires hit a two to four inch ledge which separated the unpaved portion of the gore area and the shoulder of the highway. Thereafter the automobile hit the guard rail in the gore area causing it to rocket into the air and travel some 110 feet into the 17th Street canal located just beyond the gore area. Usry was unable to escape from his vehicle and he suffered death by drowning.
The plaintiff contends that there were three basic defects in the highway which either caused or contributed to the accident. They are: 1) the signs leading up to the 1-10 1-610 fork were confusing and misleading; 2) the gore area between the two interstates was unsafe; and 3) the guard rail was improperly designed.
With regard to the first alleged defect both the plaintiff's expert and the defendant's expert indicated that the signs on the highway met the proper standards for the motorist heading East to New Orleans. There were two sets of signs giving advance warning well before the 1-10 1-610 fork. Usry chose to ignore these signs and remain in the lane heading away from 1-10 East to New Orleans until the very last instant when he made an attempt to correct his error but was unsuccessful. Any confusion which might have resulted due to inconsistent signing of the two signs before *244 the I 10 I-610 fork, one indicating West End and Canal Blvds and the other I-10 to Slidell was not a factor in this accident as the decedent intended to go downtown New Orleans. Therefore, the signs did not create any unreasonable risk of injury to the decedent.
Insofar as the remaining two allegations are concerned, the experts for both parties testified that both the gore area and the guard rail did not meet the standards that were in existence at the time of the accident. The gore area should have been much larger and evenly paved and the guard rail was improperly designed and lacked impact attenuators. However these facts alone do not serve to establish that these two items were defects in the highway. The record reflects that these two items met the proper standards for the protection of motorists that were in existence at the time the highway was constructed some 12 years earlier and further that documented plans were in the works which would have brought these areas within the then current guidelines. The failure of the state to update its highways to the current standards does not establish the existence of a hazardous defect. Roberts v. Winston Carriers, Inc., 304 So.2d 818, 824 (3rd Cir. 1974). To impose a burden upon the state of having to update its thousands of miles of highways within the latest guidelines would be an impossible one to fulfill.
Several witnesses testified that the accident was caused by driver error. The police officers conducting the accident investigation testified that Usry was speeding at the time of the accident. He was traveling at the rate of 60-65 miles per hour when the speed limit was 55 miles per hour, as per LSA-R.S. 32:61. In addition to the speeding violation the driving pattern chosen by Usry which lead to the accident was in violation of several other Louisiana Revised Statutes regulating the operation of motor vehicles including improper lane change, improper use of the median, etc.[1] The report from the Jefferson Parish Coroner's Office indicated that the decedent had a blood alcohol level of .14 milligrams establishing that Usry had been drinking alcoholic beverages shortly before the accident. The defendant's expert testified that an alcoholic blood content at this level meant that Usry's reflexes were somewhat compromised. Finally, testimony by the employees of the Department of Transportation indicated that the I-10 610 fork was one of the most congested driving areas in the state. Of the 88,000 vehicles which traverse that area each day there were only 24 accidents in that area in the year immediately preceding the accident. Of these accidents there was only one other one which involved both the gore area and the guard rail. Most of the others involved rear-end collisions and sideswipes involving the guard rail. The guard rail and gore area though somewhat outdated were serving the purpose for which they were designed, that is, the protection of motorists.
Based on the foregoing we believe that the gore area and the guard rail did *245 not create an unreasonable risk of injury to the decedent. The fact that he used it in an illegal and improper manner does not elevate the condition of the area to that of an unreasonably dangerous defect. The prudent and careful driver finding himself in the position in which Usry was in would have stayed on I-610 and exited at the next exit instead of making such a careless move which resulted in his death. It is well settled that the Department of Transportation is not responsible for every accident which may occur on the state highways, nor is it a guarantor of the safety of travelers thereon, or an insurer against all injury which may result from obstructions or defects in such highways. U. S. F & G v. State Dept. of Highways, 339 So.2d 780 (La.1976). If we had found that the contentions raised by the plaintiff were defects then we would be placing the Department of Transportation in the position of an insurer. See for example Shipp v. City of Alexandria, supra.
Accordingly, we find that the plaintiff has failed to establish the elements necessary to impose strict liability upon the Department of Transportation.
The second contention of liability raised by the plaintiff is that the accident was due to the alleged negligence of the Department of Transportation. The law in this area is well settled. It is the duty of this department to construct and maintain the highways in a condition reasonably safe for persons exercising ordinary care and reasonable prudence. The Department of Transportation is only liable when the evidence shows (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver; and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. U. S. F & G Co. v. State, Dept. of Highways, 339 So.2d 780, 785 (La.1976); Doucet v. State Department of Highways, 309 So.2d 382 (3rd Cir. 1975) writ denied 312 So.2d 340 (1975).
In consideration of our discussion above it is clear that the 3 alleged highway defects regarded by the plaintiff as a hazardous condition were not patently or obviously dangerous to a reasonably careful and prudent driver. The signs, guard rails and gore area in existence at the time of the accident were adequate for the motorist exercising ordinary care. This fact is proved by the statistics as to the number and types of accidents in this area. Furthermore, there is no doubt that Usry failed to exercise reasonable care and prudence in the operation of his automobile as he violated several statutes governing the regulation of motor vehicle traffic and suffered from the effects of having partaken of alcoholic beverages before driving that evening. Therefore, the plaintiff has failed to carry the burden of proof in establishing the first element of negligence required to permit a finding of liability against the Department of Transportation. It is not necessary for us to consider the second element. Accordingly, the plaintiff is not entitled to recovery under this theory of fault.

II
The second issue concerns the right of Reliance Insurance Co., as the workman's compensation carrier, to recover from the Department of Transportation the compensation benefits it has paid and is obligated to pay to the plaintiff. Under LSA-R.S. 23:1101 any person having paid or who becomes obligated to pay workman's compensation benefits may recover the amounts paid as compensation from the third person tortfeasor.
However, the right of the insurer to recover is based upon the right of the insured to recover. Because we have decided there is no liability of the Department of Transportation to plaintiff, for the same reasons there is no liability to Reliance and its claim is also dismissed.
Based on the foregoing, we order that the judgment of the trial court be affirmed.
AFFIRMED.
BARRY, J., dissents.
*246 BARRY, Judge, dissenting.
The trial judge properly concluded that the plaintiff carried her burden of proving causation by a preponderance of the evidence and that the gore proximately caused this accident. Therefore, under La.C.C. Art. 2317, the defendant is strictly liable. Jones v. City of Baton Rouge-Parish of East Baton Rouge, 388 So.2d 737 (La.1980).
The defendant had custody and full responsibility for the condition and maintenance of the gore and any defect thereon imputed liability to the defendant. The gore area was approximately four inches lower than the paved highway and consisted of shells rather than the rigid support afforded by the contiguous paving. The record reflects that the driver was able to successfully negotiate the change of lanes and that the accident was caused when the vehicle's tire became trapped in the soft, lower gore causing the driver to lose control and the resultant fatality.
I find it unnecessary to determine whether the signs leading to the "fork" were confusing or if the guard rail design was defective. Either or both of these two contentions could have been contributing causes of the accident, but the accident would not have occurred except for the defective gore. The gore area of this busy interstate highway should have been maintained in a reasonably safe condition and the defendant should have foreseen that this area could be subject to vehicle use at high rates of speed. Construction of the gore as it existed actually created a defect which the defendant failed to timely correct and for which it is clearly responsible.
Standards for construction "when built" is not a proper defense and the defendant had an affirmative duty to correct this dangerous area which it had knowledge of long before the accident. "If the highway, including shoulders, curbs, etc. are in need of repair, conformity with design standards existing at the time of original construction affords no defense when the highway department negligently fails to make repairs and remedy unsafe conditions." Bresnerd v. Department of Highways, 381 So.2d 1303 (La.App. 4th Cir. 1980).
The trial court's holding that the defendant had no legal duty to upgrade the highway despite its knowledge of the inherent danger was manifest error and I respectfully dissent.
NOTES
[1] LSA-R.S. 32:79:

"Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply.
"(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."
LSA-R.S. 32:82:
"A. Whenever any highway has been divided into two roadways by a median, physical barrier, or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right hand roadway and no vehicle shall be driven over, across or within the median, barrier or section, except through an improved opening or at a cross over or intersection established under authority of this Chapter."
LSA-R.S. 32:64:
"A. No person shall drive a vehicle on the highway within this state at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for the traffic on, and the surface and width of, the highway, and the condition of the weather, and in no event at a speed in excess of the maximum speeds established by this Chapter or regulation of the department made pursuant thereto."