426 So.2d 276 (1983)
David R. DAGNALL
v.
LOUISIANA DEPARTMENT OF HIGHWAYS.
No. 13301.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 1983.
Rehearing Denied February 24, 1983.
Robert E. Couhig, Jr., Adams & Reese, New Orleans, for appellant.
Philip K. Jones, Marshall W. Wroten, and Jesse S. Guillot, Trial Atty., La. Dept. of Transp. and Development, New Orleans, for appellee.
Before GULOTTA, CIACCIO and WARD, JJ.
GULOTTA, Judge.
Plaintiff appeals from a judgment dismissing his personal injury suit against the Louisiana Department of Transportation and Development. We affirm.
On July 4, 1975, David Dagnall was driving in a southerly direction on the Pontchartrain Expressway toward the Mississippi River Bridge when his vehicle was struck head-on by a vehicle driven in a northerly direction by Barney Gegenheimer, after the Gegenheimer truck had crossed the median and invaded plaintiff's traffic lane. The Gegenheimer vehicle straddled the median barrier dividing the lanes for 187 ft. 2 in. before striking plaintiff's truck.
The median measured 3 ft. 10 in. in width, 15 in. in height and divided two traffic lanes in each direction on the Pontchartrain Expressway. The median and expressway complied with the minimum engineering standards at the time of completion "in the mid-fifties."
Plaintiff contends the State should be held strictly liable for the injuries he sustained because the barrier curb median constituted a "defect" in the Pontchartrain Expressway. Alternatively, plaintiff claims the department was negligent because of its failure to correct a hazardous condition after having been given notice of the danger.
The question is whether a highway that met minimum safety standards when constructed but did not meet the revised, upgraded minimum standards when the accident *277 occurred, was so hazardous as to be unsafe to a careful and prudent driver. We conclude the highway and barrier in our case were not so hazardous.
In 1967, ASHO[1] recognized that a superior barrier was the GM deflection barrier, or the GM barrier rail,[2] and accepted it as an industry standard. In 1969, the Louisiana Department of Highways also recognized the GM barrier rail as the superior barrier and began using it on its highways. In 1972 (three years preceding the accident), the State adopted the GM deflection barrier as the minimum standard for barriers.
A traffic engineer with the Louisiana Department of Highways testified that in 1974 the daily traffic flow on the Pontchartrain Expressway was 65,454 vehicles. One accident involving the median occurred in 1974. In 1975, the daily traffic flow was 61,843 vehicles, and only two accidents involved the median between January 1, 1975 and the accident date. Both accidents were cross-overs. In 1975, the Pontchartrain Expressway had the 30th highest accident rate in the State.
The decision whether a condition of a highway actually is a dangerous and hazardous one is factual. Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975); Besnard v. Department of Highways, 381 So.2d 1303 (La.App. 4th Cir.1980), writ denied, 385 So.2d 1199 (La.1980). The Department of Highways is not responsible for every accident which occurs on a state highway nor is it a guarantor of the safety of the travelers thereon or an insurer against all injury which may occur on the highways. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). It is only required to maintain the highway in a reasonably safe condition for motorists using ordinary care and reasonable prudence. Oliver v. Parish of Jefferson, 408 So.2d 275 (La.App. 4th Cir. 1981); Coleman v. State, Through Department of Highways, 384 So.2d 484 (La.App. 2nd Cir.1980).
In Usry v. Louisiana Dept. of Highways, 402 So.2d 240 (La.App. 4th Cir.1981), writ denied, 404 So.2d 1259 (La.1981), this court exonerated the Department of Highways from liability where the protective "gore area and guard rail" had met the standards at the time of construction but did not meet upgraded standards for highway construction at the time of the accident and where we concluded that the alleged defects were not ".... patently or obviously dangerous to a reasonably careful and prudent driver."
Plaintiff claims Usry should be restricted to its factual circumstances. In Usry, while traveling on I-10, plaintiff's decedent attempted to cross the gore area between I-10 and I-610 to get onto I-10 and lost control of his vehicle. Both the gore area and the guard rail did not meet the standards in existence at the time of the accident, but met the standards that were in existence when the highway had been constructed 12 years earlier. The court in Usry noted that the guard rail served its intended purpose.
Unlike our case, the decedent, in Usry contributed to his own death by his negligent operation of his vehicle. Dagnall, on the other hand, was an innocent driver struck through the negligent operation of a truck that crossed the median and invaded his lane of traffic. Usry is similar to our case in that the barriers in both cases met the minimum safety standards at the time of construction but not at the time of the accident.
We agree that Usry is factually distinguishable from our case; however, the legal guidelines established in Usry are applicable. We reject plaintiff's claim that the barrier in our case did not serve its intended purpose of protecting innocent motorists from vehicles crossing into their lane of traffic. It is unreasonable to expect any barrier to protect against all crossings. As pointed out hereinabove, the Department of *278 Transportation is not responsible for every accident that occurs on its state highways nor is it the guarantor of the safety of travelers.
A divided highway is defined in LSA-R.S. 32:1(15) as follows:
"`Divided highway' means any highway divided into roadways by a median, physical barrier, or clearly indicated dividing section so constructed as to impede vehicular traffic."
This divider, though not meeting current standards, was not inherently dangerous and served the purpose for which it was intended. The unusually high daily traffic flow in 1975 when compared to the minimal number of accidents (between January 1, 1975 and the accident date), two in number, is supportive of that conclusion.
Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] ASHO represents the American Association of State Highways and Transportation Officials comprised of the 50 state highway departments.
[2] Although not clear from the record, it appears that the GM barrier is a barrier approximately 2½ feet in height.