522 So.2d 683 (1988)
Deborah A. SEYMOUR and George S. Seymour, Jr., Individually, and George S. Seymour, Jr., as Administrator of the Estates of His Minor Children
v.
Jack L. LaCAVA, Allstate Insurance Company, Jerry Dwight Benson, ABC Insurance Company Josephine Alford, XYZ Insurance Company and Firemen's Fund/National Surety Corp. of California and the Louisiana Department of Transportation and Development.
No. 87-CA-744.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 1988.
Writ Denied May 6, 1988.
Perrin C. Butler, Robert C. Stern, Metairie, for plaintiffs-appellants.
Jesse S. Guillot, Robert M. Johnston, New Orleans, for defendants-appellees.
Before CHEHARDY, C.J., and KLIEBERT and DUFRESNE, JJ.
DUFRESNE, Judge.
This is a personal injury suit which comes to us on appeal from a judgment of the trial court in favor of the defendant, the Louisiana Department of Transportation and Development (DOTD) and which dismissed the plaintiffs' suit.

FACTS
On December 27, 1980, at approximately 10:00 p.m., George Seymour, Jr. was operating his 1974 Oldsmobile station wagon, on the Pontchartrain Expressway in New Orleans, traveling in the left hand south-bound *684 lane towards the Greater New Orleans Mississippi River Bridge. His wife, their children and Rhonda Hautau were occupants of the car.
Traveling in the left lane of the northbound lanes of the Expressway were two vehicles; a 1979 Chevrolet pickup truck operated by the defendant, Jack LaCava, and a 1965 Cadillac, owned by Josephine Alford and operated by the defendant, Jerry Benson who was in the center lane of the Expressway. The lanes of traffic on the Expressway are separated by a concrete barrier, which was installed at the time of construction in 1957.
The beginning of the accident occurred in the northbound lanes of the Expressway when the LaCava and Benson vehicles collided. Benson's vehicle struck the rear of LaCava's pick-up truck, causing the vehicles to flip into the air. The LaCava vehicle landed near the Expressway barrier, however, the Benson vehicle flipped so high in the air that it jumped over the barrier into the southbound lane crashing into the Seymour's station wagon, causing serious injuries to all of its occupants.
Although there were numerous defendants at various stages of this litigation, the plaintiffs entered into settlement with some defendants and others were dismissed from the suit prior to trial.
Trial was commenced and continued on November 15, 1985, January 24, 1986, and December 5, 1986. At time of trial DOTD based its defenses on the following assertions:
1) The barrier separating the lanes was a standard type of barrier at the time of construction.
2) The Expressway has not been changed, renovated, nor has it been rebuilt since its original construction in 1957.
3) The barrier separated the southbound traffic from the northbound traffic.
4) The accident was not caused by the barrier.
5) The sole cause of the accident was the negligence of the defendants, LaCava and Benson, in the reckless operation of their motor vehicles.
After trial on the merits, the trial court rendered judgment in favor of DOTD and against the plaintiffs. From this ruling plaintiffs have appealed.
The basis of plaintiffs' action against DOTD is the assertion that the barrier separating the northbound and southbound lanes of traffic on the Expressway was inadequate. That DOTD knew or should have known that the barrier was defective and dangerous.
The Expressway is a high speed controlled access elevated roadway which was constructed from the end of Interstate-10 to the Greater New Orleans Bridge. It consists of three northbound and three southbound lanes separated by a curbed divider approximately ten inches high. There are no openings within the divider. All of the exits to the Expressway are within one mile of each other from its beginning to its end at the Greater New Orleans Bridge. Construction on the Expressway was begun in 1957 and was finished by 1959.
Various experts were qualified and testified at the trial concerning the design of the "Expressway" and more particularly the median barrier. All testified that the Expressway and the barrier were built in accordance with acceptable design standards in effect at the time of the planning and construction of the Expressway. Plaintiffs' expert testified that although the barrier met the standard of 1957, it was ineffective in preventing cross-over accidents since it was not high enough.
An eye witness to the accident, John Grillet, Sr., testified that the Cadillac was veering from one lane to the other traveling at least 70 MPH when it rammed the pick-up truck and flipped over the median.
The trial court provided excellent reasons for judgment and concluded that DOTD was not at fault here.
The Court stated:
"A lot of testimony at trial concerned the various types of barricades that were available on the date of the accident. The evidence showed that the Pontchartrain Expressway met minimum safety *685 standards when built, but did not meet upgraded minimum standards in effect on the date of the accident. Testimony showed that other roads built around the time of the Expressway had higher, stronger barriers which exceeded the minimum safety requirement. Certainly a higher, stronger barricade could have been constructed between opposing lanes of the Pontchartrain Expressway. However, this Court is of the opinion that there was no duty on the part of the Louisiana Department of Transportation and Development to erect a more modern barricade.
The Court relies heavily on the case of Dagnall v. Louisiana Department of Highways, 426 So.2d 276 (La.App. 4th Cir., 1983) in reaching its decision. Dagnall is a case which also involved a crossover accident on the Pontchartrain Expressway. The Dagnall court held that a "highway that met minimum safety standards when constructed but did not meet revised upgraded minimum standards when the accident occurred, was not so hazardous as to be unsafe to a careful and prudent driver." The court added that "the Department of Transportation and Development is not responsible for every accident which occurs on a state highway, nor is it a guarantor of the safety of the travelers thereon or an insurer against all injury which may occur on the highways. It is only required to maintain the highway in a reasonably safe condition for motorists using ordinary care and reasonable prudence." Sinitiere v. Lafergne, [Lavergne,] [sic] 391 So.2d 821 (La.1980); Oliver v. Parish of Jefferson, 408 So.2d 275 (La.App. 4th Cir.1981); Coleman v. State, through Department of Highways, 384 So.2d 484 (La.App. 2nd cir., 1989 [1980]).
This Court is of the opinion that the Louisiana Department of Transportation and Development did not have a duty to upgrade the Pontchartrain Expressway to meet safety standards in effect on December 27, 1980. The court finds that any negligence in this accident was not the fault of the Louisiana Department of Transportation and Development."
Because we find no error in the trial court's reasoning, we affirm. After careful review of the record, we have concluded that the trial court's evaluation of the evidence was reasonable and is void of error. There is sufficient evidence to establish the basis for the trial court's findings.
The duty of the State is not the insurer of all its roads, nor does it warrant the condition of all roads. The State is not responsible for every accident that may occur on the highways. The highways of the state need not be in perfect condition of repairs, however, the State is required to use ordinary and reasonable care in order to keep the roadways in a reasonably safe condition for the motorist who exercises ordinary and prudent care in the operation of his vehicle.
In Norris v. La. Dept. of Highways, 337 So.2d 257 (La.App. 3rd Cir.1976), the Court concluded that the State only needs to maintain a roadway system which is reasonably safe for persons exercising ordinary care and reasonable prudence.
The trial court relied heavily upon the decision in Dagnall v. The Department, 426 So.2d 276 (La.App. 4th Cir.1983). In this case, we also find similarities. In Dagnall, the plaintiff was driving southerly on the Expressway towards the Greater New Orleans Mississippi River Bridge (same direction as the Seymour vehicle) when his vehicle was struck by a vehicle operated by Gegenheimer in the northbound direction (the same as LaCava and Benson). The Gegenheimer vehicle straddled a part of the barrier for approximately 187 feet before crashing into the Dagnall vehicle. The Court ruled that the failure to update the construction of the roadway to current standards did not establish the existence of a hazardous defect. We agree. See also, Usry v. The Department, 402 So.2d 240 (La.App. 4th Cir.1981).
Based on the evidence presented, we hold that the barrier placed upon the Expressway did not create an unreasonable risk of injury to the plaintiffs. Furthermore, plaintiffs failed to carry their burden of establishing that the barrier created a hazardous *686 condition. The plaintiffs failed to establish the elements necessary to impose fault under any theory upon DOTD.
DOTD is only liable when the evidence shows:
1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinarily prudent driver; and
2) that DOTD had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it. Dagnall, above.
In Dagnall, the Court rejected plaintiffs' claims that the barrier did not serve its intended purpose of protecting innocent motorists from vehicles crossing. As pointed out in Dagnall, supra and in Usry, supra, DOTD is not responsible for every accident that occurs on its state highways nor is it the guarantor of the safety of travelers.
In Dagnall the Court concluded a divided highway is defined at LSA: R.S. 32:1 (15) as follows:
"`Divided highway' means any highway divided into roadways by a median, physical barrier, or clearly indicated dividing section so constructed as to impede vehicular traffic."
This divider, though not meeting current standards, was not inherently dangerous and served the purpose for which it was intended. The unusually high daily traffic flow in 1975 when compared to the minimal number of accidents (between January 1, 1975 and the accident date), two in number, is supportive of that conclusion.
We find the roadway where this accident occurred was not defective, nor was the roadway a hazard creating an unreasonable risk of harm.
We find the evidence sufficient to establish that the accident here was caused by the negligence of LaCava and Benson and that DOTD was not at fault here under any theory.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.