698 So.2d 1017 (1997)
Charles Robert BARRY, III
v.
PLAQUEMINE TOWING CORPORATION.
No. 96 CA 0979.
Court of Appeal of Louisiana, First Circuit.
August 4, 1997.
Rehearing Denied September 23, 1997.
*1018 Robert H. Schmolke, Baton Rouge, for Plaintiff-Appellee Charles Robert Barry, III.
Alan K. Breaud, Lafayette, for Defendant-Appellant, Plaquemine Towing Corp.
Before LOTTINGER, C.J., and LeBLANC, FOIL, FOGG and FITZSIMMONS, JJ.
LOTTINGER, Chief Judge.
Plaquemine Towing Corporation appeals the judgment of the trial court finding that plaintiff, Charles Robert Barry (Barry), a Jones Act seaman, was injured in the course and scope of his employment. We reverse.

FACTS
On April 25, 1993, the date of the alleged accident, Barry was employed by Plaquemine Towing as a deckhand. Barry was one of a two man crew assigned to the M/V Robert Banta, with the other crew member being the captain of the vessel, Thomas Reid. On April 25, 1993, Barry came on duty at 6:00 p.m. and was scheduled to work a twelve hour shift. At approximately 7:00 p.m., Captain Reid positioned the M/V Robert Banta adjacent to a barge to continue pumping operations on the barge.
At trial, Barry testified that, after pulling up to the barge, he complied with the captain's instruction to tie only a headline to the barge. According to Barry, the tugboat was secured to the barge at a 45 degree angle leaving a span of approximately three to four feet between the two vessels. Barry then followed the captain's instruction to proceed from the deck of the tugboat to the deck of the barge. When Barry landed on the barge, he twisted his ankle, fell to the deck and landed on his back. Several hours after the incident, the captain noted in the M/V Robert Banta's log that Barry "slipped and fell" on the barge, and that Barry stated that he was alright and continued working. The captain further noted that at approximately 1:30 a.m. Barry refused to clean the engine room due to back pain.
Following this incident, Barry continued to work for several days to complete his ten day shift. Before the start of his next shift, Barry left Plaquemine Towing for a better employment opportunity.
At trial, Barry testified that about a month after the incident, his ankle began to swell. He stated that the swelling got worse causing him to have trouble walking. On July 22, 1993, approximately three months after the incident, Barry sought medical treatment for his ankle and back from orthopedic surgeon, Dr. Allen Johnston. Barry's right ankle was the primary focus of his first visit with Dr. Johnston. Dr. Johnston testified that he aspirated a rather large cystic area on the outside of Barry's ankle. Dr. Johnston also examined Barry's low back finding some mild limitations in range of motion but normal strength, reflexes and sensation. Dr. Johnston recommended physical therapy for Barry's back.
Regarding the ankle, Dr. Johnston instituted a conservative treatment plan calling for restricted activities. When Barry's symptoms did not subside, Dr. Johnston fitted him with a leg brace to alleviate some of the pain and discomfort. None of these conservative measures provided Barry with any appreciable relief, and Dr. Johnston performed surgery on his ankle to remove what he believed to be a ganglion cyst. Following surgery, Dr. Johnston discovered that his original diagnosis of a ganglion cyst was incorrect and that Barry's problems resulted from a deep micro-bacterial infection. Since beginning treatment with Dr. Johnston, the bones in Barry's ankle have undergone significant deterioration. This deterioration will continue without further surgery.
At trial, Dr. Johnston related the infection in Barry's ankle to the slip and fall on the barge. When questioned about the causal relationship between Barry's back problems and the accident, Dr. Johnston testified that Barry's low back and hip symptoms were of a mechanical nature resulting directly from his altered gait.
Following trial, the trial judge determined that Plaquemine Towing was at fault in causing Barry's accident and that Barry met his burden of proving a causal connection between the accident and his injuries. Judgment was granted in favor of Barry and *1019 against Plaquemine Towing for a total of $254,515.00. Plaquemine Towing now appeals.

STANDARD OF REVIEW
The Louisiana Supreme Court has determined that Louisiana courts of appeal shall apply the state manifest error standard of review in general maritime and Jones Act cases. Milstead v. Diamond M Offshore, Inc., 95-2446, p. 11 (La. 7/2/96); 676 So.2d 89, 96. Under this standard of review, the appellate court may not set aside a finding of fact by the trial judge or jury unless it is manifestly erroneous or clearly wrong. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112, p. 8 (La. 7/5/94); 639 So.2d 216, 220. That does not mean that the reviewing court can virtually never upset the trial court's findings. Id. at 221. After giving great deference to the factfinder, the reviewing court has every right to determine whether the trial court's verdict "was clearly wrong based on the evidence, or clearly without evidentiary support." Id.
In written reasons for judgment, the trial judge stated:
Dr. Johnston testified that as a result of the slip and fall accident, the plaintiff suffered an acute injury to his right ankle, and acute injury to his low back which has evolved into a chronic condition as a direct result of [the] ankle injury, and developed a bacterial marinum infection in his right ankle which has resulted in the continuous deterioration of the bones in the area of the lower leg and foot.
In proving a causal connection between an accident and subsequent injuries, a plaintiff is aided by the legal presumption that a medical condition producing disability is presumed to have result[ed from] an accident, if before the accident the injured person was in good health, but commencing with the accident, the symptoms of the disabling condition appear and continuously manifested themselves afterward. This is to be understood with the condition that the medical evidence shows there to be a reasonable possibility of a causal connection between the accident and the disabling condition. Housely [Housley] v. Cerise, 579 So.2d 973, 980 (La.1991). Dr. Johnston's testimony more than adequately proves [the] causal connection between the plaintiff's accident and his resulting injuries.
For the following reasons, we find that Dr. Johnston's testimony did not show, by a reasonable possibility, the causal connection between Barry's slip and fall and his existing micro-bacterial infection.
Dr. Johnston gave the following testimony to support his conclusion regarding the causal relationship between Barry's injuries and the accident. First, Dr. Johnston repeatedly stated that the type of bacteria causing the infection in Barry's ankle are found in brackish water. Dr. Johnston defined brackish water as "[w]ater where fresh water meets salt water." When questioned about where Barry came into contact with brackish water, Dr. Johnston stated, "I would assume that a barge that floats up and down the Mississippi River, and that's an assumption on my part, may have brackish water in or about any place on that barge. I mean, that would be a likely place for me to think that you might get a micro-bacterial infection."
Upon further questioning, Dr. Johnston stated that he was unaware that Barry was an avid hunter and fisherman. Although Barry testified at trial that he "lived for" hunting and fishing, he had not informed Dr. Johnston of these activities. Dr. Johnston agreed that both Lake Maurepas and the marshes of South Louisiana contain brackish water and that he had no authorities to suggest that the Mississippi River near Baton Rouge contained brackish water.
Dr. Johnston was also unaware that Barry had a weak ankle prior to the barge incident. However, Dr. Johnston stated that a weak ankle is not a breeding ground for micro-bacterial infection. Dr. Johnston also stated that he had no idea that Barry was working exclusively in the harbor near Sunshine, Louisiana when he twisted his ankle. Nor was he aware that the barge in question had been stationary in the harbor for the last ten years. Dr. Johnston testified that he "understood that [the incident occurred] on a *1020 barge that floated up and down the Mississippi River."
Ultimately, the weight to be given expert testimony is dependent upon the facts on which it is based, as well as the professional qualifications and experience of the expert. Meany v. Meany, 94-0251, p. 11 (La. 7/5/94); 639 So.2d 229, 236. For an expert opinion to be valid and to merit much weight, the facts on which it is based must be substantiated by the record. Rogers v. Roch, 95-242, p. 11 (La.App. 5 Cir. 10/18/95); 663 So.2d 811, 817, writ denied, 95-2769 (La. 1/26/96); 666 So.2d 678. If the opinion is based upon facts not supported by the record, the opinion may be rejected. Meany, 639 So.2d at 236.
Dr. Johnston clearly testified that the bacteria which caused the infection in Barry's ankle live in brackish water. The Mississippi River does not contain brackish water near Sunshine, Louisiana. In concluding that Barry encountered the bacteria on the barge, Dr. Johnston assumed that the barge and Barry traveled up and down the Mississippi River. Dr. Johnston had no knowledge that the barge was stationary or that Barry worked exclusively in the harbor near Sunshine, Louisiana. Most significantly, Dr. Johnston was unaware that Barry was an avid hunter and fisherman.
Considering the limited information with which Dr. Johnston formulated his opinion, we must conclude that the trial judge committed manifest error in relying on Dr. Johnston's opinion to determine that Barry proved a causal connection between the accident and his existing bacterial infection. Based on the evidence in the record, we conclude that Barry failed to prove a causal connection between the accident and his disabling condition.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed and the case is dismissed. Costs of this appeal are assessed against plaintiff, Charles Robert Barry.
REVERSED AND RENDERED.
FITZSIMMONS, J., concurs.
FOGG, J., dissents and assigns reasons.
FOGG, Judge, dissenting.
I respectfully dissent. Recently in the case of Van Atta v. Team Services, Inc., 96-0190 (La.App. 1 Cir. 11/8/96); 684 So.2d 472, 475, writ denied, 97-0341 (La. 4/18/97); 692 So.2d 447, we stated:
Recently, in Milstead v. Diamond M Offshore, Inc., 95-2446 (La. 7/2/96); 676 So.2d 89, 96, the Louisiana Supreme Court directed state appellate courts to apply Louisiana's manifest error standard of review in general maritime and Jones Act cases. Under the manifest error standard of review enunciated in Stobart v. State of Louisiana, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993), in order to reverse a factual determination, an appellate court must find (1) a reasonable factual basis does not exist in the record for the finding and (2) the record establishes that the finding is clearly wrong or manifestly erroneous. The issue to be resolved by a reviewing court is not whether the factfinder's conclusion is right or wrong, but whether the conclusion is a reasonable one. Reasonable evaluations of credibility and reasonable inferences of fact may not be disturbed on review where conflicts exist in the testimony. Nevertheless, although this court must give great deference to the trier of fact, we have a constitutional duty to review facts and reverse verdicts of a trial court that are clearly wrong based on the evidence, or are clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La. 7/5/94); 639 So.2d 216, 221.
I believe that careful examination of the record reveals that the trial court did not manifestly err in its determination of facts relative to the issues raised by the appellant. The majority disputes the trial court's reliance on Dr. Johnston's expert opinion as to the cause of Barry's ailment. However, Dr. Johnston's conclusion that Barry suffered from a deep micro-bacterial infection which resulted from his accident aboard the M/V Robert Banta is supported by the record and *1021 provides a reasonable factual basis for the trial court's judgment. The written reasons for judgment of the trial court are, in pertinent part, as follows:
Dr. Allen Johnston was tendered as an expert in orthopaedic surgery and the Court accepted him as such. Dr. Johnston corroborated the plaintiff's testimony, and provided additional detailed testimony concerning the nature of the plaintiff's injuries and the etiology of those injuries. Specifically, Dr. Johnston instituted a conservative treatment plan which called for restricting the plaintiff's activities. When the plaintiff's symptoms did not subside, Dr. Johnston fitted him with a leg brace to alleviate some of the pain and discomfort. None of these conservative measures provided the plaintiff with any appreciable relief, and Dr. Johnston performed surgery on his ankle to remove what he believed to be a ganglion cyst.
Subsequent to that surgery, Dr. Johnston discovered that his original diagnosis of a ganglion cyst was incorrect and that the plaintiff's problems resulted from a bacterial marinum infection which was something that had developed directly as a result of this accident. Thereafter, further radiological films were obtained, and a comparison of pre- and post-surgical films were reviewed by this Court during Dr. Johnston's testimony, and the deterioration of the plaintiff's ankle and foot bones since the beginning of his medical treatment were obvious to the naked eye. Dr. Johnston further testified that this deterioration will continued unless further surgical correction is performed.
At the time of this accident, the plaintiff also sustained an injury to his lower back which has within the last year become more symptomatic. When questioned about the causal relationship between the plaintiff's back problems and eh [sic] accident, Dr. Johnston testified that the plaintiff's low back and hip symptoms ere [sic] of a mechanical nature resulting from his altered gait. The plaintiff's gait has changed over time since the accident because of the deteriorating nature of his ankle injury.
In summary, Dr. Johnston testified that as a result of the slip and fall accident, the plaintiff suffered an acute injury to his right ankle, and acute injury to his low back which has evolved into a chronic condition as a direct result of eh [sic] ankle injury, and developed a bacterial marinum infection in his right ankle which has resulted in the continuous deterioration of the bones in he [sic] area of the lower leg and foot.
In proving a causal connection between an accident and subsequent injuries, a plaintiff is aided by the legal presumption that a medical condition producing disability is presumed to have result for an accident if, before the accident the injured person was in good health, but commencing with the accident, the symptoms of the disabling condition appear and continuously manifested themselves afterward. This is to be understood with the condition that the medical evidence shows there to be a reasonable possibility of a causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973, 980 (La.1991). Dr. Johnston's testimony more than adequately proves he [sic] causal connection between the plaintiff's accident and his resulting injuries.
These sound reasons for judgment are supported by the record. Specifically, Dr. Johnston testified that the degree of deterioration of Barry's ankle coincided with the length of time that had expired since the injury. He further stated that the bacteria that invaded Barry's ankle was found in dirty or brackish water. Therefore, as to these factual determinations, I believe the judgment is not reversible under the above stated standard of review.
With respect to the award of penalties for the arbitrary and capricious failure to pay maintenance and cure, the appellant asserts that, under the United States Fifth Circuit Court of Appeals case of Guevara v. Maritime Overseas Corp., 92-4711 (5 Cir. 7/26/95) 59 F.3d 1496, cert. denied ___ U.S. ___, 116 S.Ct. 706, 133 L.Ed.2d 662 (1996), punitive damages are not available in cases of willful non-payment in any action for maintenance and cure, whether it be tort or contract, *1022 under the General Maritime Law. That case was rendered on July 26, 1995, the instant case was tried on August 2 and 3, 1995. Subsequently, this court, in Graves v. Businelle Towing Corp., 95-1999 (La.App. 1 Cir. 4/30/96); 673 So.2d 311, ruled that, under the Jones Act and the General Maritime Law, recoverable losses are limited to pecuniary losses and punitive damages are classified as nonpecuniary damages. Therefore, the trial court erroneously awarded penalties for arbitrary and capricious failure to pay maintenance and cure.
For the foregoing reasons, I believe the judgment of the trial court should be amended to delete the punitive damages imposed against Plaquemine Towing for willful non-payment of maintenance and cure; in all other respects, the judgment should be affirmed.