hLeBLANC, J.
This is an appeal by plaintiffs, Carrol Robin and Penny Pool Robin, from a trial court judgment in favor of defendant, the State of Louisiana through the Department of Transportation and Development (the State), granting the State’s motion for directed verdict and dismissing plaintiffs’ suit.
FACTS
In the very early morning hours before dawn on May 11, 1993, Mr. Robin was travelling east bound on the Whiskey Bay Bridge of Interstate 10. He was driving his pickup truck and towing a boat on a boat trailer. As he began up the bridge incline, he heard a noise and felt his truck swerve. He pulled to the far right side of the bridge, stopped, and allegedly engaged his emergency flashers. After an oncoming 18-wheeler passed him in the left hand lane, Robin got out to inspect his boat and trailer. The trailer hitch connecting his truck and trailer was broken, but the truck and trailer were still attached via the safety chain. Friends travelling in the area observed Robin and stopped to assist. Temporary repairs were quickly made, but before they could return to their vehicles, a second 18-wheeler approached. This 18-wheeler struck the rear of Robin’s boat trailer, crushing Robin between his truck and the concrete guardrail. Robin suffered extensive injuries.
Robin filed suit naming as defendants Tommy Strother, the driver of the 18-wheeler, Mississippi Fast Freight Company, Inc. (Strother’s employer), and Ranger Insurance Company (Mississippi Fast Freight’s liability carrier). Ranger third partied The Hammerblow Corporation, the manufacturer of Robin’s trailer hitch, and the State, and plaintiffs amended their petition naming Hammerblow and the State as additional defendants. All defendants were dismissed prior to trial except the State.[1]
| o,After plaintiffs presented their case in chief and rested, the State moved for a directed verdict. The trial court granted the State’s motion for directed verdict, dismissing plaintiffs’ suit. Plaintiffs now appeal.
LAW AND DISCUSSION
Louisiana Code of Civil Procedure article 1810 provides as follows:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
A trial judge has much discretion in determining whether or not to grant a motion for directed verdict. Barnes v. Thames, 578 So.2d 1155, 1162 (La.App. 1 Cir.), writs denied, 577 So.2d 1009 (1991). A motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant’s opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. New Orleans Property Development, Ltd. v. Aetna Casualty and Surety Company, 93-0692, p. 5 (La.App. 1 Cir. 4/8/94); 642 *45 So.2d 1312, 1315. If there is substantial evidence opposed to the motion, i.e., evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. Myers v. American Seating Company, 93-1350, p. 6 (La.App. 1 Cir. 5/20/94); 637 So.2d 771, 774, writs denied, 94-1569, 94-1633 (La.10/7/94); 644 So.2d 631, 632.
On appeal, the standard of review for a directed verdict is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. Bergeron v. Blake Drilling & Workover Company, Inc., 599 So.2d 827, 841 (La.App. 1 Cir.), writs denied, 605 So.2d 1117, 1119 (1992). The propriety of a directed verdict must be evaluated in light of the substantive law underpinning the plaintiffs claims. New Orleans Property Development, Ltd. v. Aetna Casualty and Surety Company, 93-0692 at 6; 642 So.2d at 1315.
Robin’s claims against DOTD were based on theories of negligence, Louisiana Civil Code article 2315, and/or strict liability, Louisiana Civil Code article 2317.[2] Although the two theories constitute separate and distinct avenues of relief in a claim for damages resulting from a dangerous condition, the two theories are similar. Under either theory, plaintiff must prove (1) the thing which caused the damage was in the custody of the defendant; (2) the thing contained a “defect” (i.e., it had a condition that created an unreasonable risk of harm to the plaintiff); and (3) the “defective” condition of the thing caused the injuries. In essence, the only difference between the negligence theory of recovery and the strict liability theory of recovery is the plaintiff need not prove the defendant was aware of the existence of the “defect” under the strict liability theory. Under the negligence theory, it is the defendant’s awareness of the dangerous condition of the property that gives rise to a duty to act. Under a strict liability theory, it is the defendant’s legal relationship with the property containing a defect that gives rise to the duty. Oster v. Department of Transportation and Development, State of Louisiana, 582 So.2d 1285, 1288 (La.1991).
Robin alleges that the State is liable for his injuries for failure to properly maintain the roadway, and more particularly, because of the State’s alleged failure to provide and maintain a shoulder of adequate width on the Whiskey Bay Bridge. It is well settled that the State has a duty to maintain a reasonably safe highway for the protection of those people who could foreseeably be placed in danger by an unreasonably dangerous condition. That duty encompasses an obligation to provide and maintain an efficient and continuous system of all state highways and bridges. That duty also extends to the shoulder portion of the roadway. See Bethea v. Louisiana Department of Transportation and Development, 415 So.2d 535, 538 (La.App. 1 Cir.1982). However, the failure of | ¡¡the State to update its highways to the current standards does not establish the existence of a hazardous defect. Usry v. Louisiana Department of Highways, 402 So.2d 240, 244 (La.App. 4 Cir.), writ denied, 404 So.2d 1259 (1981). To impose a burden upon the State of having to update its thousands of miles of highways within the latest guidelines would be an impossible one to fulfill. Id.
Admittedly, at the time of the accident, the Whiskey Bay Bridge did not meet current standards. David Huval, em *46 ployed by the Department of Transportation and Development as a Whiskey Bay Bridge engineer, testified the roadway of the Whiskey Bay Bridge was designed in 1965 to have two, twelve foot lanes and two, three foot six inch shoulders for a total of thirty-one feet from curb to curb. The final design plans were completed on March 9, 1967. The American Association of State Highway Officials (AASHO) policy on design of rural highways, published in 1954 and 1965, stated shoulders for divided highways should be at least ten feet wide. On a long structure or in unusually difficult construction, shoulders should have no less than eight feet width. On structures longer than 150 feet, shoulders narrower than eight feet were to be considered. Both the 1954 and 1965 manuals state a minimum of not less than two and preferably three feet for shoulders on major long span structures. The AASHO policy on design of interstate systems, revised June 20, 1967, stated the standards for shoulder width on bridges was to be “full roadway width” and on major long span bridges shoulder width should be “at least 3 jé feet”.
Dwayne Evans also testified concerning the shoulder width. Evans was accepted by the court as an expert in the fields of accident reconstruction, traffic engineering and highway geometric design. He testified the design of the highway and the absence of full width shoulders were the primary cause of the accident. Evans testified with reference to AASHO and related the results of a simulated accident he conducted on the Whiskey Bay Bridge incline. Evans opined that the three foot six inch width outside the travel lane was for “clearance” and that ten foot shoulders would have allowed a disabled vehicle to Isget out of the lane of travel. Evans also testified concerning the February, 1967 AASHO “yellow book”[3] recommendation of full shoulder width on all structures.
Under either theory of recovery, strict liability or negligence, plaintiffs must prove that there was a defect in the bridge (the bridge created an unreasonable risk of harm). The trial court held reasonable minds would conclude at the time the bridge was built, it conformed to minimum safety standards. The trial court held the bridge was not defective. Because it could not be shown that the State created an unreasonable risk of harm, the trial court granted the State’s motion for directed verdict.
Plaintiffs argue the trial court erred in failing to consider evidentiary inferences in the light most favorable to the plaintiffs and in failing to give proper weight to Evans’ testimony. If expert testimony given in response to hypothetical questions is predicated on a statement of unproven facts, it has no probative value and should not affect the outcome of the case. Meany v. Meany, 94-0251, p. 10 (La.7/5/94); 639 So.2d 229, 236. Ultimately, the weight to be given expert testimony is dependent on the facts on which it is based, as well as the professional qualifications and experience of the expert. For an expert opinion to be valid and to merit much weight, the facts on which it is based must be substantiated by the record. Barry v. Plaquemine Towing Corp., 96-0979, p. 5 (La.App. 1 Cir. 8/4/97); 698 So.2d 1017, 1020. If the opinion is based on facts not supported by the record, the opinion may be rejected. Id. Meany v. Meany, 94-0251 at 11; 639 So.2d at 236.
The facts on which Evans’ opinion was based relative to an inadequate design, i.e., a requirement of full width shoulders on the Whiskey Bay Bridge, are absent from the record. In contrast, the opinion of Huval was supported by the above mentioned and documented design standards of AASHO. The Whiskey Bay Bridge had shoulders which met the minimum design standards at the time the bridge was designed and built. We find no *47 error with the inferences adopted by the trial court.
17Moreover, the trial court properly disregarded that portion of Evans’ opinion testimony concerning the accident simulation as the simulation was not based on facts substantiated by the record. Evans testified he conducted the simulation assuming Robin’s truck and boat trailer emergency flashers were turned on. However, although Robin testified he engaged his emergency flashers, this issue was contested at trial. Therefore, the trial court properly disregarded Evan’s testimony concerning the simulation which assumed facts that were not substantiated by the record.
The evidence established that the design of the Whiskey Bay Bridge complied with applicable standards in effect at the time of its planning and construction. Even considering all evidentiary inferences in the light most favorable to the plaintiffs, we find no error by the trial court in concluding reasonable minds could not reach a contrary verdict that the State did not breach its duty to design a safe roadway and that reasonable minds could not reach a contrary verdict that the legal cause of the accident was the negligence of the driver of the 18-wheeler and the negligence of Robin. The Whiskey Bay Bridge does not present an unreasonable risk of harm. It is not defective because it has not been updated to the most recent safety standards. The facts are so overwhelmingly' in favor of the State that reasonable people could not reach a contrary verdict. Therefore, the trial court did not err in granting the State’s motion for directed verdict.
By motion to this Court, the State seeks to have portions of plaintiffs’ brief stricken. We deny the State’s motion, but note that we have not relied on any portion of plaintiffs’ brief for a statement of the testimony given at trial or for a statement of the law.
CONCLUSION
For the foregoing reasons, the trial court judgment granting the motion by the State for a directed verdict is affirmed. The motion by the State to strike is denied. Costs of this appeal to be paid by plaintiffs, Carrol and Penny Robin.
AFFIRMED.

. The judgment dismissing Hammerblow incorrectly includes language dismissing plaintiffs' suit in its entirety. Apparently neither party has recognized the error, as no formal action was taken with regard to it. We note both the incorrectly included language and the additional language of the judgment which reserved plaintiffs’ rights against any remaining defendants.

. Article 2317 was amended and reenacted as Article 2317.1 by La. Acts 1996, 1st. Ex. Sess., Act No. 1, § 1. The amended version is a substantive change in the law and cannot be applied retroactively. Warren v. Campagna, 96-0834, p. 16 n. 4 (La.App. 4 Cir. 12/27/96); 686 So.2d 969, 978 n. 4. See also Frank L. Maraist and Thomas C. Galligan, Jr., Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law, 71 Tul.L.Rev. 339, 369 (1996).

. Highway Design and Operational Practices Related to Highway Safety, A Report of the Special AASHO Traffic Safety Committee, copyrighted 1967.